# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8364 | **DATE** | 5/25/2001 |
| **CASE TITLE** | Viola Jackson vs. Galileo International, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion for summary judgment is granted. For the reasons set forth in the attached opinion and order, the court finds there is no genuine issue of material fact on any of the claims Jackson asserts against Galileo International, Inc. for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000 et seq. and age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq. Galileo is, therefore, entitled to judgment as a matter of law on all of plaintiff's claims. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | **2** | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | **MAY 29 2001** | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | | **35** |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | ED-7 FILED FOR DOCKETING 01 MAY 25 PM 12: 28 | 5/25/2001 | |
| kf | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | kf | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DOCKETED

MAY 29 2001

| | | |
|---|---|---|
| VIOLA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99 C 8364 |
| | ) | Paul E. Plunkett, Senior Judge |
| GALILEO INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Viola Jackson has sued Galileo International, Inc., ("Galileo") for its alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Galileo has filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

## Facts[1]

Galileo is a computer systems development company that provides services to the travel industry. (Def.'s LR 56.1(a)(3) Stmt. ¶ 1.) Jackson, an African-American woman over the age of forty, was hired by Galileo's predecessor in 1987 as a collector in the billing department. (Id. ¶¶ 2, 5.) Jackson worked as a collector from 1987-1996. (Id. ¶ 7.)

---

[1]Unless otherwise noted, these facts are undisputed.

35

In 1996, Jackson became a contract specialist.  (Id.)  Her duties as a contract specialist included opening project orders, processing and drafting contracts according to customer specifications, working with the legal department on contract language and checking for errors.  (Id. ¶ 8.)[2]  Initially, Jackson was supervised in this position by Ellen Japczyk.  (Id. ¶ 9; Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. B, Fay Dep. at 46.)  In May 1997, Cindy Fay became Jackson's supervisor. (Def.'s LR 56.1(a)(3) Stmt. ¶ 9.)  Jackson's performance for the period November 1, 1996 through October 31, 1997 was reviewed both by Japczyk and Fay.  (Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. B, Fay Dep. at 40-46; id., Ex. C, 1996-1997 Performance Review at G000402.)  In the review, Fay praised Jackson's attitude, but noted that  "[she] . . . need[s] to work on the quality of her contracts" and "to take time to check her own work so that she is not dependent upon others to catch her mistakes."  (Id., Ex. C, 1996-1997 Performance Review, Manager's Summary at G000404.) Jackson was given an overall rating of "Meeting Requirements," the second of three possible overall ratings.  (Id. at G000403.)

In April 1998, the supervisors of the contract specialist group developed quality control measures for the contract specialists.  (Def.'s LR 56.1(a)(3) Stmt. ¶ 11.)  One of those measures was the error-to-contract ratio maximum.  That ratio measures the accuracy of the information processed into contracts by the contract specialists; the higher the ratio, the greater the number of errors.  (Id. ¶¶ 11-13.)

---

[2]Though Jackson disputes Galileo's description of the contract specialist job, Jackson's fact statement contains a nearly identical description of that position.  (See Pl.'s Stmt. Facts ¶ 6.) Moreover, the testimony she cites in support of her fact statement indicates that opening project orders, administering contracts and checking for errors, the duties listed by Galileo but not by Jackson, were, in fact, duties of the contract specialist job.  (See id.; Pl.'s App. Supp. Resp. Def.'s Mot. Summ. J., Ex. A, Jackson Dep. at 11-14.)

In June 1998, Jackson and five other contract specialists were put on probation because of their high error-to-contract ratios. (Id. ¶ 14.) Jackson received a memo outlining the terms of her probation, which said that: (1) she would be monitored for sixty days for contract errors; (2) at the end of those sixty days her error-to-contract ratio had to be at or below 30 percent; (3) Fay would meet with her every two weeks to discuss Jackson's progress; (4) if Jackson succeeded in achieving the 30 percent ratio, she would be expected to maintain it for six months; and (5) if she failed to achieve a 30 percent ratio in that sixty-day period, she would be given thirty days to improve or find another job. (Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. D.) Jackson did not achieve an error-to-contract ratio at or below thirty percent by the end of those sixty days. (Def.'s LR 56.1(a)(3) Stmt. ¶ 27.)

Despite Jackson's failure to achieve the necessary ratio, at the end of the sixty days Galileo extended her probationary term. (Id. ¶ 30.) By the end of the extension period, however, Jackson still had not achieved the desired ratio. (Id. ¶ 33.)

In September 1998, during the first extension, Jackson applied for a job with Galileo as a billing service representative. (Id. ¶¶ 38, 44.) Connie England was the decision-maker with respect to this job. (Id. ¶ 45.) England interviewed Jackson and others, and chose Denise Saiger, another Galileo contract specialist, for the job. (Id. ¶¶ 46, 50.) At the time she applied, Saiger, who is white and was at least forty years old when England selected her, had a lower error-to-contract ratio than Jackson. (Id. ¶¶ 50, 54, 58; id., Ex. E, Galileo's Resp. Pl.'s Req. Admit, No. 6.) England did not know Jackson's age, which was fifty-four, when she made the decision to hire Saiger. (Id. ¶ 47; id., Ex. C, Jackson Dep. at 3.)

Two months later, two more billing service representative positions became available. (Id. ¶ 59.) Initially, the jobs were posted only within the company. (Id. ¶ 61.)[3] Jackson sent an e-mail to England, who again was the decision-maker, expressing her interest in these jobs. (Pl.'s App. Resp. Mot. Summ. J., Ex. F, 11/17/98 E-mail to Boedigheimer, England from Jackson.) Apparently believing that her previous application was sufficient, however, Jackson did not submit another one. (Id., Ex. A, Jackson Dep. at 24-26.) Having received no internal applications, England interviewed outside applicants for the jobs. (Def.'s LR 56.1(a)(3) Stmt. ¶ 64.)[4] Ultimately, England hired Irene McGreevey, a white woman under the age of forty, for one of the positions and Katherleen Sims, an African-American woman under the age of forty, for the other. (Id. ¶¶ 65, 69.)

Apparently, about the time she applied for the second billing service representative position, Jackson's first extension period ended.[5] Though she still had not achieved the required ratio, Galileo extended Jackson's probationary period for a second time. (Id. ¶¶ 33-34.) The result was the same, however. At the end of the second extension period, Jackson had still not achieved the required ratio. (Id. ¶ 37.)[6]

In December 1998, after the second extension of her probation, Jackson filed a charge with the EEOC in which she claimed that Galileo's decisions not to hire her as a billing services

---

[3]Jackson denies the facts asserted in paragraph 61 of Galileo's LR 56.1(a)(3) Statement, but the facts she cites to support that denial do not controvert the statement made by Galileo.

[4]See n.3

[5]We say apparently because the record does not disclose the length of the first extension, but it does say that Jackson's EEOC charge, which was filed in December 1998, was filed after her probation was extended for a second time. (See Def.'s LR 56.1(a)(3) Stmt. ¶ 73.)

[6]See n.3.

representative in September and November 1998 were the product of race and age discrimination. (Id. ¶ 73.)

On March 16, 1999, Galileo discharged Jackson.  (Id. ¶ 74.)


### The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  At this stage, we do not weigh evidence or determine the truth of the matters asserted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  We view all evidence and draw all inferences in favor of the non-moving party.  Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).  Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party.  Id.


### Discussion

Having no direct evidence of discrimination, Jackson must satisfy the McDonnell Douglas burden-shifting method of proof if she is to defeat this motion.  Chiaramonte v. Fashion Bed Group, 129 F.3d 391, 397 (7th Cir. 1997).  To do so, she must first establish a prima facie case of discrimination.  Id. at 397-98.  Once established, the prima facie case creates a rebuttable presumption of discrimination.  Id. at 398.  The burden of production then shifts to Galileo to articulate a legitimate, nondiscriminatory reason for the challenged employment decision.  Id.  If

Galileo carries its burden, the presumption of discrimination disappears and Jackson must show that the proffered reasons for the challenged employment decisions are merely a pretext. Id.

To establish a prima facie case on her race discrimination claims, Jackson must show that she: (1) is a member of a protected class; (2) she was qualified for the job or was meeting Galileo's legitimate expectations; (3) she suffered an adverse employment action; and (4) Galileo treated similarly situated employees outside the protected class more favorably. Foster v. Arthur Andersen, LLP., 168 F.3d 1029, 1035 (7th Cir. 1999). The prima facie case on her age discrimination claims is identical expect for the last element, which requires evidence that Galileo accorded more favorable treatment to employees who were substantially younger than Jackson. Hoffman v. Primedia Special Interest Publ'ns, 217 F.3d 522, 524 (7th Cir. 2000). Finally, to establish a prima facie case on her retaliation claim, Jackson must show that she engaged in protected activity, suffered an adverse employment action and that there is a causal link between the two. Gorence v. Eagle Food Ctrs., Inc., No. 99-2101, 2001 WL 225239, at 4 (7th Cir. 2001). We will address the race and age claims first. [7]

Jackson contends that Galileo discriminated against her when it refused to hire her as a billing service representative in September 1998 and November 1998 and discharged her from the contract specialist position in 1999. Though it concedes that the discharge was an adverse employment action, Galileo contends that its failure to hire Jackson as a billing service representative was not. The billing service representative position, Galileo argues, would not have garnered Jackson a higher salary, a more distinguished title or otherwise improved the terms and conditions

---

[7]In her response, Jackson repeatedly refers to the "hostile work environment" at Galileo. (See Pl.'s Resp. Mot. Summ. J. at 3, 10-11.) Jackson did not raise a hostile work environment claim either in her EEOC charges or in her complaint. She may not, therefore, raise it now.

of her employment. Thus, it concludes, its failure to hire her for that position was, in essence, a refusal to grant her a lateral transfer, an action that does not constitute an adverse employment action.

The Court disagrees. Our court of appeals has held that a purely lateral transfer, and, therefore, presumably, the denial of one, does not constitute an adverse employment action. Williams v. Bristol-Meyers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). But Jackson's quest for a billing service representative position was more akin to an application for a new job than a request for a transfer. Jackson did not ask her supervisor to move her to a new building, shift or city. Rather, she went through a competitive application process for a different position, at a different salary in a different department. (See Def.'s LR 56.1(a)(3) Stmt. ¶¶ 44-46.) The competitive application process distinguishes Jackson's situation from other employment actions that have been characterized as lateral transfers. See, e.g., Williams, 85 F.3d at 272-74 (unilateral transfer of drug salesman from one division to another); Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 135-36 (7th Cir. 1993) (involuntary transfer of bank employee from a management-level job in one branch to a similar management-level job in another); Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 885-86 (7th Cir. 1989) (reassignment of principal from one school to another pursuant to district-wide reorganization plan).

Moreover, even if we characterized Jackson's attempts to secure a billing services representative position as a request for a transfer, the undisputed facts of this case establish that it would not have been a purely lateral move. When Jackson applied for the billing service representative positions, her days as a contract specialist were numbered. She applied the first time, in September 1998, after her initial probation as a contract specialist had come to an unsuccessful

end and the first extension period was well under way. (Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. D; Pl.'s Resp. Def.'s Stmt. Facts ¶¶ 27, 29-30, 38, 44.) When she expressed interest in the job a second time, she was starting the second extension of her probation, having unsuccessfully completed the first. (Pl.'s App. Resp. Mot. Summ. J., Ex. F, 11/17/98 E-mail to Boedigheimer, England from Jackson; Pl.'s Resp. Def.'s Stmt. Facts ¶¶ 33-34, 59.) Though the billing services representative position paid less, it had one big advantage over the contract specialist position: job security. Because obtaining the billing services representative position would have altered one of the fundamental terms of Jackson's employment with Galileo, its duration, Galileo's failure to select her for the job is an actionable adverse employment action. See Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) (holding that "a plaintiff who is made to undertake or who is denied a lateral transfer – that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or *her future employment opportunities*") (emphasis added).

Galileo also contends that it is entitled to judgment on the claims that stem from Jackson's November 1998 attempt to secure the billing services representative position because she never actually applied for the job. This time, the Court agrees. England, the decision-maker for the billing services representative job, testified as to the procedures she followed to fill the vacancies in those positions. She opened up an internal job requisition, sent it Galileo's Human Resources ("HR") Department for posting, reviewed the applications that HR sent to her, interviewed candidates for the job and communicated her selection to HR, which notified the applicants of the results. (Def.'s LR 56.1(a)(3) Stmt., Ex. D, England Dep. at 26-28, 31, 33-34.) England also said that she does not

respond to informal inquiries about job postings because applicants must follow HR procedures for applying for a job. (Id. at 42.) Though Jackson expressed her interest in the November 1998 billing services representative positions to England through an e-mail, it is undisputed that she did not submit an application for the job. (Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. A, Jackson Dep. at 26.)[8] Because Jackson has adduced no evidence that suggests e-mail inquiries are equivalent to formal applications or that England ordinarily treated them as such, the record establishes that she did not apply for a billing services representative position in November 1998. Accordingly, Galileo is entitled to judgment as a matter of law on Jackson's discrimination claims stemming from her purported application for the billing services representative job in November 1998.

We turn next to the claims arising from Galileo's failure to select Jackson for the September 1998 billing services representative position. There is no dispute that Jackson meets the first and third elements of the prima facie case on these claims. Galileo contends, however, that she does not meet the fourth element because there is no evidence that Galileo treated similarly situated, non-black or substantially younger employees more favorably.[9] We agree.

First, the record establishes that Denise Saiger, the white woman who was awarded the billing services representative position, was not situated similarly to Jackson. Like Jackson, Saiger was a contract specialist when she applied for the job. (Pl.'s Stmt. Facts ¶ 11.) And like Jackson,

---

[8] Jackson contends that she did not need to submit another application because her prior one "was on file." (See Pl.'s Resp. Def.'s Mot. Summ. J. at 6.) Absent evidence that either Galileo's HR Department or England retained the applications of unsuccessful job applicants for consideration for future job openings, however, this contention is pure speculation.

[9] Galileo also contends that Jackson was not qualified for the job, and thus, does not meet the second element of the prima facie case. Because we agree that she does not meet the fourth element, however, we need not address this contention.

Saiger had been put on probation in June 1998 for failing to meet the required error-to-contract ratio. (Def.'s LR 56.1(a)(3) Stmt., Ex. C, Jackson Dep. at 44.) But that is where the similarities end. There is no evidence to suggest that Saiger, like Jackson, was still on probation in September 1998 when she applied for the billing services representative position.[10] Moreover, Jackson admits that Saiger had a lower error-to-contract ratio and experience working with customers from the beginning to the end of projects, experience that Galileo desired and Jackson lacked. (Pl.'s Resp. Def.'s Stmt. Facts ¶¶ 43, 51, 53, 54.)[11] In short, because Jackson and Saiger did not have the same work experience or skills and there is no evidence that they had the same probationary status when they applied for the billing services representative job, Saiger was not, as a matter of law, situated similarly to Jackson.

Even if she were, Jackson's age claim would still fail because there is no evidence that she is substantially older than Saiger. The record reveals that Jackson was fifty-four when she applied for the billing services representative position and that Saiger was at least forty. (Id. ¶ 50; Def.'s LR 56.1(a)(3) Stmt., Ex. C, Jackson Dep. at 3.) The record does not, however, indicate Saiger's exact age. Thus, Saiger may have been substantially younger than Jackson, but she also may have been slightly younger than Jackson, the same age as Jackson or older than Jackson. Absent evidence to suggest that Saiger is at least ten years younger than Jackson, evidence Jackson has not provided,

---

[10]Jackson asserts in her fact statement that Saiger was still on probation when she applied for the position but the evidence she cites does not support that assertion. (See Pl.'s Stmt. Facts ¶ 11.)

[11]Jackson contends that she had equivalent work experience, but none of the facts she cites suggest that she had experience working with customers throughout the life of a project. (See Pl.'s Resp. Def.'s Stmt. Facts ¶ 53; Pl.'s Stmt. Facts ¶¶ 1-2, 6, 9, 12.)

she cannot satisfy the fourth element of the age discrimination prima facie case. See Hoffman, 217 F.3d at 524 (noting that a ten-year age difference is presumptively substantial).

That leaves the claims arising out of Jackson's discharge. With respect to the discrimination claims, Galileo argues that Jackson has not demonstrated that she was meeting its legitimate expectations or that it treated non-black or substantially younger employees more favorably. We agree. Though Jackson makes much of the fact that she received an overall rating of "Meeting Requirements" in her November 1, 1996-October 31, 1997 performance review,[12] the issue is not whether Jackson *ever* met Galileo's legitimate expectations, but whether she was doing so at the time she was discharged. Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1262 (7th Cir. 1993). It is undisputed that Jackson was on probation and had not achieved the thirty percent error-to-contract ratio, the minimum standard required of Galileo contract specialists, when she was discharged in March 1999. (Pl.'s Resp. Def.'s Stmt. Facts ¶¶ 11-18, 27, 29-30, 33-34, 37.)[13] Thus, regardless of her prior performance, the record establishes that Jackson was not meeting Galileo's legitimate expectations when she was discharged in March 1999.

The record also does not suggest that Galileo treated any similarly situated employees outside of the protected classes more favorably. Jackson has adduced no evidence that Galileo continued to employ a non-black or a substantially younger contract specialist who was put on probation and

---

[12]Jackson repeatedly and incorrectly refers to this review as the 1997-1998 performance review. (Compare Pl.'s Stmt. Facts ¶¶ 7, 18-19, Pl.'s Resp. Def.'s Mot. Summ. J. at 13-14 with Pl.'s App. Supp. Resp. Mot. Summ. J., Ex. C, 1996-1997 Performance Review at G000397 (noting that review period started November 1, 1996 and ended October 31, 1997).)

[13]Jackson disputes the fact that she had not achieved the required error-to-contract ratio at the time of her discharge, (see Pl.'s Resp. Def.'s Stmt. Facts ¶ 37), but none of the evidence she cites suggests that she had. (See id.; Pl.'s Stmt. Facts ¶¶ 17-24.)

failed to achieve the required error-to-contract ratio during the probationary period. Absent such evidence, Jackson's discrimination claims fail.

Her retaliation claim meets the same fate. To satisfy the last element of the prima facie case on this claim, Jackson must present some evidence that suggests there is a causal link between the filing of her EEOC charge and her discharge. The only evidence that could possibly suggest such a link is the timing of Jackson's discharge, which occurred three months after she filed her EEOC charge. Even if an inference of retaliation could arise from that timing, an issue we do not decide, it would be vitiated by Jackson's work history. When she filed her EEOC charge, Jackson had been on probation for seven months and had yet to meet the required error-to-contract ratio. When she was discharged three months later, she was still on probation and still had not achieved the necessary ratio. Under the circumstances, the temporal proximity between the filing of Jackson's EEOC charge and her discharge cannot support an inference of retaliation.

Even if she did satisfy the prima facie case, her claim would still fail because there is no evidence to suggest that Galileo's legitimate nondiscriminatory reason for firing her, poor performance, was pretextual. Cindy Fay, the Galileo employee who decided to terminate Jackson, testified that she did so because Jackson was unable to meet the required error-to-contract ratio. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 75-77.) Jackson argues that Fay is not to be believed because: (1) she attributed the majority of Jackson's 1996-1997 review to her predecessor Japczyk, though Japczyk claimed Fay was the author; and (2) Fay claims she gave Jackson an unfavorable review for the period January-October 1998, but the review is not signed by Fay or Jackson and Jackson says she did not see it until the litigation commenced. (Pl.'s Resp. Def.'s Mot. Summ. J. at 13-14.) In other words, Jackson wants the Court to find, based solely on her belief that Fay lied about other

issues, that Fay is also lying about the reason she fired Jackson. That we cannot do. Whether Fay lied about the authorship of Jackson's 1996-1997 evaluation and Jackson's receipt of the 1998 evaluation has no bearing on the veracity of her stated reasons for firing Jackson. Because Jackson admits that she was performing poorly at the time of her discharge and she has no evidence to suggest that Fay terminated her for any other reason, her retaliation claim would fail even if she could make out a prima facie case.

### Conclusion

For the reasons set forth above, there is no genuine issue of material fact on any of the claims Jackson asserts against Galileo International, Inc. for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Galileo is, therefore, entitled to judgment as a matter of law on all of plaintiff's claims. This is a final and appealable order.

ENTER:

UNITED STATES DISTRICT JUDGE


DATED: 5/25/01